IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

AMY'S ICE CREAMS, INC.,
        Plaintiff,

-vs-                                                          Case No.  A-13-CA-449-SS

AMY'S KITCHEN, INC.,
        Defendant.

## O R D E R

BE IT REMEMBERED on the 30th day of September, 2014, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant Amy's Kitchen, Inc.'s Motion to Exclude Plaintiff Amy's Ice Creams, Inc.'s Untimely Lost Royalty Theory of Damages, the Expert Testimony of Amelia Simmons, and Sanctions [#36], Plaintiff's Response [#42], and Defendant's Reply [#52]; Defendant's Motion to Exclude Opinions and Testimony of Thomas O. Jukam and Isabella Cunningham [#39], Plaintiff's Response [#44], and Defendant's Reply [#54]; Defendant's Motion for Summary Judgment [#46], Plaintiff's Response [#63], and Defendant's Reply [#66]; and Plaintiff's Motion for Partial Summary Judgment [#58], Defendant's Response [#60], and Plaintiff's Reply [#64]. Having considered the documents, the file as a whole, the governing law, and the parties' arguments at the hearing, the Court enters the following opinion and orders.

## Background

This trademark case involves Amy's Ice Cream, Inc. (AIC) suing Amy's Kitchen, Inc. (AK) based primarily on AK's recent launch and sale of non-dairy frozen dessert, also known as "non-



dairy ice cream." The basic facts are AIC started in the early 1980s selling ice cream in storefronts in Austin, Texas. AIC has continued to grow and currently has about thirteen stores, all of which are in Austin except for one store in Houston and one store in San Antonio. AIC also sells other sweet foods like cookies and cakes. AIC has never obtained a federal trademark registration, but it did obtain a Texas trademark registration for its mark "AMY'S" covering "ice cream and other frozen confection" in 1986.

AK has been in business since the late 1980s and sells frozen foods through grocery stores. AK brands itself as a healthy frozen foods option selling mostly vegetarian and vegan items. For instance, their first product was a vegetable pot pie. AK did obtain federal trademark registrations in 1994 for the mark "AMY'S" and "AMY'S KITCHEN" for some of their offerings. They have since obtained five more federal registrations as they have expanded their products.

Typically, AK has sold frozen meal options, but they have at various points experimented with "sweet food" products. Since 1990, AK has sold an apple pie and has continued offering this product since. Other examples of sweet food offerings over the years roughly covering 1990 to 2008 include: (1) the apple pie since 1990; (2) in 1993, AK offered a whole meal which included an apple crisp dessert; (3) in 1994, AK offered a line of frozen cakes; (4) starting in 2000, AK offered a "toaster pop" which has been marketed as both a breakfast item and a dessert item; and (5) in 2008, AK offered a line of organic cakes. Some of these product lines were relatively short-lived while others, like the apple pie and toaster pop, have been a consistently produced item.

Then, starting in 2008, AK made a concerted push to move more clearly into the dessert foods market. AK has added gluten-free cookies, candy bars, gluten-free brownies, gluten-free biscotti, and—most importantly to this case—non-dairy frozen dessert. The meaning of "non-dairy

frozen dessert" is somewhat disputed by the parties. As the Court understands the term at this point in time, non-dairy frozen dessert is an alternative to ice cream, but it is not actually ice cream. Consumers might choose non-dairy frozen dessert for health reasons or dietary restrictions. Nevertheless, it is often referred to, and marketed as, "non-dairy ice cream" and sold in the ice cream section of grocery stores. AK's activity since 2008 has been the source of rising tensions between AIC and AK.

In September 2010, AIC filed a federal trademark application for "AMY'S ICE CREAMS," to cover "ice cream" (since removed), "shirts," and restaurant services featuring ice cream, fruit ice, candy, chocolates, and beverages; catering."   In January 2011, AK opposed AIC's application. In June 2011, AK filed federal applications for the marks "AMY'S" and "AMY'S KITCHEN" covering "candy bars" and "cookies." In October 2011, AIC contacted AK regarding the parties' respective trademark rights and looking to resolve the parties' issues. They were apparently unable to resolve their problems, and as AK continued to expand its dessert offerings, AIC decided to file a lawsuit in May 2013. In August 2013, AIC renewed an application for "AMY'S ICE CREAMS" for "ice cream." Since AIC initiated the lawsuit, AK has taken the non-dairy frozen dessert to market. AK has presented evidence it has discontinued sales of the non-dairy frozen dessert in the greater Austin area as of July 2014. *See* Def.'s Resp. [#60-10], Ex. D (Chipman Decl.), ¶ 4.

AIC has asserted the following causes of action:

(1) Trademark infringement under Texas law;
(2) Common law trademark infringement;
(3) Federal unfair competition under Section 43(a) of the Lanham Act;
(4) Common law unfair competition;
(5) Dilution under Texas law;
(6) Unjust enrichment;
(7) Declaration that AIC is entitled to federal registration of its "AMY'S" marks;

          and
(8)    Refusal of AK's registrations.

Am. Compl. [#13], at 6–8.

AK has moved for summary judgment, and AIC has moved for partial summary judgment. In addition, AK has also filed two motions to exclude. The parties have fully briefed the motions, and the Court now addresses them in anticipation of this case's trial date in the month of April 2015.

## Analysis

### I.    Motions for Summary Judgment

#### A.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.     AK's Motion for Summary Judgment**

**A.     Laches**

AK's primary argument for summary judgment is laches. Laches is "inexcusable delay that results in prejudice to the defendant," and involves three elements: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013). In short,

AK contends AIC has known about AK for more than twenty years and should have brought suit a long time ago. As AK views the issue, if AIC had investigated, it would have found out AK had been offering various sweet foods and in an increasing fashion, and the lengthy delay in filing suit should bar AIC's claims.

AIC defends against laches by asserting the "progressive encroachment" theory, "which allows a trademark owner to tolerate de minimis or low-level infringements and still have the right to act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark." *Id.* at 623. AIC does not dispute it has known about AK since the 1980's, but AIC's problem with AK is not its use of the mark "AMY'S" or AMY'S KITCHEN" in connection with the frozen food products it has long offered. Rather, AIC is only concerned with AK's activity since 2008 and what it sees as AK's "progressive encroachment" into the dessert foods market. In particular, AIC objects to AK's sale of non-dairy frozen dessert, which puts AK more directly in competition with AIC.

The Court fails to see why laches should apply to this case especially regarding AK's non-dairy frozen dessert, the main product at issue in this case. AK actually did not even start selling non-dairy frozen dessert in the market until after this lawsuit started, so the notion laches would bar AIC's claims against the use of the "AMY'S" mark in connection with non-dairy frozen dessert is untenable. Basically, AK is trying to use the fact it sold apple pie since 1990 and offered other sweet food products like an apple crisp dessert, frozen cakes, and toaster pops to varying degrees as a basis for being able to sell seemingly any kind of sweet food it wants, including non-dairy frozen dessert. The Court rejects the argument. Non-dairy frozen dessert is different than apple pie, and it makes sense AIC did not previously file a lawsuit against AK for selling apple pie. AK's sale of non-dairy

frozen dessert does more directly compete with AIC's business, and AIC has timely objected to this encroachment.

With respect to the other sweet foods offered by AK since 2008, including gluten-free cookies, candy bars, gluten-free brownies, and gluten-free biscotti, AK's position is stronger, but the Court concludes there are, at a minimum, fact issues precluding judgment for AK based on laches. These fact issues include the degree to which these products are a natural extension of AK's previously offered goods and when AIC knew, or should have known, about them.

Therefore, the Court DENIES AK's laches-based argument for summary judgment.

**B.     Whether Court has jurisdiction over pending trademark applications**

AK's second argument for summary judgment is premised on this Court's lack of jurisdiction to handle AIC's declaratory judgment claims. AIC has asked the Court to determine the parties' respective rights to registration, which are also pending in federal trademark applications before the United States Patent and Trademark Office (USPTO). Under the Lanham Act, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. In order for the Court to exercise jurisdiction over pending applications, one of the parties must have a registered trademark which has a sufficient nexus with the dispute over the pending applications. *See* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:113.50 (4th ed.); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, No. 97-C-155-C, 1998 WL 766703, at *1 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999).

Here, AK has a number of federal trademark registrations in the marks "AMY'S" and

"AMY'S KITCHEN" for its frozen foods, including apple pie, but AK argues these registrations are insufficiently related to the pending applications to allow the Court to rule on the party's registration rights. In other words, AK contends the pending applications have nothing to do with AK's pre-existing registrations. AK contends the outcome of the pending applications does not impact AK's previously registered trademarks. In fact, AK's trademarks are incontestable at this point and are not challenged by AIC.

While recognizing the incontestability of AK's registered marks and the fact any decision on the parties' registration rights, as encompassed in the pending applications, by this Court will not impact those previous registrations, the Court does find a sufficient nexus exists in this case between the registered marks and the pending applications. AK's applications are essentially an attempt to expand their registered marks to new products, and AIC's applications are in direct conflict with AK's applications. In fact, AK, in opposing AIC's applications, asserted their registered trademarks, arguing it has priority, and there is a likelihood of confusion. In addition, AK has asserted its registered trademarks in this case via its laches argument. Basically, AK has argued AIC is barred by laches from challenging AK's use of its "AMY'S" mark in connection with non-dairy frozen dessert (and other sweet foods) because AIC knew—actually or constructively—about AK's registered marks for other foods since the early and mid-1990s. Therefore, AK's utilization of its registered trademarks, both offensively and defensively, reflects a nexus between these registered marks and the parties' applications sufficient to give this Court jurisdiction to determine the parties' respective rights to registration.

Furthermore, the Court notes a number of other reasons militating toward the exercise of jurisdiction. First, AK's applications have only been opposed by AIC, and AIC's applications have

only been opposed by AK, meaning the rights of third parties should not be affected by any determination by this Court regarding the disputed marks. Second, the issues to be decided appear to be limited to priority and likelihood of confusion, which are otherwise on the table in this lawsuit and are issues routinely handled by this Court. Finally, the Court notes the proceedings at the USPTO apparently have been stayed pending the outcome of this case based on AK's request with AIC's consent.

Therefore, the Court DENIES AK's jurisdictional ground for summary judgment on AIC's declaratory judgment causes of action.

### C.     Federal Dilution Act

AK next argues for judgment on AIC's state dilution claim because the Federal Dilution Act provides that ownership of a valid trademark registration on the principal register is a "complete bar" to state law dilution claims. The Federal Dilution Act provides in relevant part:

> The ownership by a person of a valid registration . . . on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—
>
> (A)   is brought by another person under the common law or a statute of a State; and
>
> (B)(i)   seeks to prevent dilution by blurring or dilution by tarnishment; or
>
> (ii)   asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label or form of advertisement.

15 U.S.C. § 1125(c)(6).

The issue before the Court is one of statutory interpretation and specifically the meaning of "with respect to *that mark*." *Id.* (emphasis added). Here, AK owns incontestable federal registrations for the marks "AMY'S" and "AMY'S KITCHEN" in standard character and stylized

form for a variety of foods, including apple pie and toaster pastries. In AK's view, these registrations are a complete bar to state dilution claims premised on AK's use of the mark even when the challenged use is not made in connection with the goods and services described in the original registration. AIC disputes this interpretation and argues AK's registrations only bar state dilution claims challenging AK's use of the registered mark with respect to the goods and services described in the original registration. Stated differently, AIC does not think AK should be able to use its registered marks for its frozen food products to bar AIC's dilution claim based on AK's use of the same marks in connection with non-dairy frozen dessert (and other dessert products).

At the hearing, both sides agreed this is an unanswered question in the case law, and neither side could point the Court to a circuit opinion on the issue, leaving the Court with little guidance. Other courts confronting the issue have faced the same dilemma. *See Exxon Mobil Corp. v. FX Networks, LLC*, No. H-13-2906, 2014 WL 4100412, at *2 ("The parties agree that there is a paucity of judicial authority directly on point."); *Westchester Media Co. v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 977 (S.D. Tex. 1999) (noting this question is "left for another day").

As a matter of common sense, the Court agrees with AIC. AK's view, when extrapolated, seems to be it can use the marks "AMY'S" and "AMY'S KITCHEN" on any good or service it wants and be immune from any state dilution claim because it has registrations in those marks. The Court rejects this logic and thinks it more sensible to limit AK's ability to bar state dilution claims based on its federal registrations to situations where AK has used the marks on goods or services actually described in its registrations. This conclusion is consistent with the limited authority. *See Exxon Mobil*, 2014 WL 4100412, at *2 (declining to bar state dilution claim where defendant had a "standard character" registration and sought to extend the statutory bar to "special form" marks);

*Westchester Media*, 103 F. Supp. 2d at 977 (concluding the defendant's state dilution counterclaim was barred due to the plaintiffs' federal registration of the precise mark at issue).

Therefore, the Court DENIES AK's argument for summary judgment based on the Federal Dilution Act.

### D.     Unjust enrichment

Finally, AK moves for summary judgment on AIC's unjust enrichment claim on the ground there is no independent cause of action for unjust enrichment under Texas law. The parties both cite cases illustrating the lack of clarity regarding whether unjust enrichment is an independent cause of action. The Court need not offer its opinion on the matter because it fails to see how unjust enrichment applies to this case at all. "Despite the lack of unanimity among Texas courts, one thing remains clear: even in the cases [suggesting unjust enrichment is not an independent cause of action], the courts have still allowed plaintiffs to recover based on the *theory* of unjust enrichment so long as a 'person has obtained a benefit from another by fraud, duress, or the taking of undue advantage.'" *Newington Ltd. v. Forrester*, No. 3:08-CV-0864-G, at *4 (N.D. Tex. Nov. 13, 2008) (quoting *Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008)). Neither AIC's allegations nor the summary judgment record support any notion AK obtained any benefit from another by fraud, duress, or the taking of undue advantage. Therefore, the Court GRANTS AK's motion for summary judgment concerning the unjust enrichment claim.

## C.     AIC's Motion for Partial Summary Judgment

AIC is seeking partial summary judgment on its trademark infringement, unfair competition, and unjust enrichment claims as to AK's sale of non-dairy frozen dessert in Texas under the mark "AMY'S." AIC's main reasons are: (1) AIC has used the mark "AMY'S" for ice cream and other

frozen confection in Texas since the early 1980s; (2) AIC owns a still-valid Texas trademark registration from 1986 for the mark "AMY'S" covering "ice cream and frozen confection"; (3) AK previously alleged there was a likelihood of confusion between the two products in its objections to AIC's federal trademark application; and (4) both parties' experts found "appreciable levels of confusion."

To prevail on a trademark infringement claim, a plaintiff must establish (1) ownership in a legally protectable mark, and (2) infringement of said mark. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2008).[1] The touchstone of trademark infringement is likelihood of confusion as to the source, affiliation, or sponsorship of the products or services at issue. *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

To qualify as a trademark, the symbols or words in question must be distinctive. *See Amazing Spaces*, 608 F.3d at 237. A mark can be distinctive in one of two ways: (1) the mark is inherently distinctive because its intrinsic nature serves to identify a particular source (i.e., the mark is fanciful, arbitrary, or suggestive), or (2) the mark has acquired distinctiveness through the development of secondary meaning (i.e., descriptive marks). Whether a mark is inherently distinctive and whether it has acquired secondary meaning are questions of fact. *Id.* at 246.

First, AIC argues "AMY'S" is inherently distinctive, but there can be no dispute the mark "AMY'S" is not inherently distinctive as it is descriptive. The mark "AMY'S" describes the owner

---

[1] AIC brings its infringement claims under Texas law, and the Court applies the traditional analysis under the Lanham Act to address those claims. *See Amazing Spaces*, 608 F.3d at 235 n.7 ("'A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.'") (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) (internal quotation omitted)).

and maker of the ice cream, Amy Simmons. Personal names—both surnames and first names—are generally regarded as descriptive terms that require proof of secondary meaning. *See* 2 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 13.2 (4th ed.) ("Personal names are placed by the common law into that category of noninherently distinctive terms which require proof of secondary meaning for protection."); *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988) (requiring plaintiff to prove secondary meaning for its "FAY'S LEADER" mark); *Nolen v. Lufkin Indus., Inc.*, No. MO-10-CA-48-H, 2011 WL 10581991, at *2 (W.D. Tex. Feb. 3, 2011). AIC also contends its state trademark registration is powerful evidence of distinctiveness, but the registration is only prima facie proof of: (1) the validity of the registration; (2) the registrant's ownership of the mark; and (3) the registrant's exclusive right to use the mark in commerce in Texas in connection with the goods or services specified in the certificate. TEX. BUS. & COM. CODE § 16.060(c)(1)–(3).

Since the mark is descriptive, AIC must show its marks have achieved secondary meaning, that is, that the marks are uniquely associated with a specific source in the minds of the public. *See Smack Apparel*, 550 F.3d at 476. Whether a particular mark or trade dress has acquired secondary meaning can be proven by a consideration of the following evidence: (1) length and manner of use of the mark or trade dress; (2) volume of sales; (3) amount and manner of advertising; (4) nature of use of the mark or trade dress in newspapers and magazines; (5) consumer survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the trade dress. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998). In light of these factors and the competing evidence the parties have presented on the issues, the Court finds there are genuine issues of material fact on whether the "AMY'S" mark has acquired secondary meaning with respect to AIC, and, if so,

the regions of Texas where secondary meaning exists.

Moreover, the Court finds there are several genuine issues of fact on likelihood of confusion, an inquiry which is inherently a question of fact. *See Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 225–26 (5th Cir. 1998). Likelihood of confusion is determined by looking at a series of eight factors, including "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (internal quotation omitted). The "[l]ikelihood of confusion means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (internal citation omitted). Both parties have presented credible, competing evidence on these factors, creating numerous genuine issues of material fact and making resolution of the dispute not suitable for summary judgment.

Therefore, the Court DENIES AIC's motion for partial summary judgment as there are numerous fact issues involved, particularly concerning the strength of AIC's mark and whether there is a likelihood of confusion between AIC's and AK's respective uses of the mark "AMY'S."

## II. Motions to Exclude

### A. AK's Motion to Exclude Plaintiff's Untimely Lost Royalty Theory of Damages, the Expert Testimony of Amelia Simmons, and Sanctions

AK complains about the late disclosure by AIC of a "lost royalty" damages theory, i.e. the idea AIC should recover for the royalty it could have and should have received from AK for AK's

use of the AMY'S mark in connection with non-dairy frozen dessert. AIC asserted this theory for the first time on August 8, 2014, nearly a year after AIC was required to provide a calculation of damages in its Rule 26 initial disclosures, nearly two months after AIC was required to provide expert reports, the day after the close of fact discovery, and two weeks before the close of expert discovery. Previously, AIC's only claimed damages theory was lost profits, i.e. AK's profits from the sale of the non-dairy frozen dessert. AK's expert, Dr. Samuel Hadaway, responded to the claim of lost profits by representing AK had not actually experienced any profits thus far in the sale of non-dairy frozen dessert.

In response to Hadaway's report, AIC provided Amy Simmons, the founder and owner of AIC, as a rebuttal expert who asserted for the first time the "lost royalty" theory. AIC frames Simmons as a rebuttal expert because Hadaway did not address what AIC argues are standard damages theories in trademark cases, including lost royalties. AK points out, however, Hadaway merely addressed lost profits since it was the only damages theory asserted by AIC. Hadaway did not address lost royalty because AIC never mentioned it.

The Court rejects Simmons as a rebuttal expert. In the Court's view, upon realizing it had no viable monetary damages theory, AIC tried to squeeze a lost royalty theory into the case and used Simmons to do so. Nevertheless, as discussed at the hearing, the Court will not exclude Simmons or the lost royalty theory at this juncture.

First, the Court finds little prejudice in permitting some limited discovery on the issue. While AK is correct it will incur more costs in defending against this new theory, those costs should not be significant. The parties previously came to a conditional agreement to permit late disclosure of Simmons as an expert and scheduled a tentative deposition while waiting for the Court's decision

on AK's motion to exclude. Consequently, Simmons is willing and ready to be deposed. AK will also potentially have to pay their own expert to rebut the theory, but this process should not be too complicated. If the lost royalty theory is as weak as AK (and the Court) believes it is, and if AIC's only expert supporting the theory is the owner and founder of AIC—i.e., the plaintiff—merely claiming what she would have charged, AK's work in dismantling these claimed damages will be little work at all.

Second, the Court finds no prejudice concerning a fair trial. This case is not set for trial until April 2015, leaving the parties ample time to complete discovery and prepare their case for presentation to a jury.

Therefore, the Court DENIES AK's motion to exclude the lost royalty theory of damages and the testimony of Simmons at this point in the litigation. The Court emphasizes this is not a ruling on admissibility. Rather, the Court is simply permitting late disclosure of Simmons as an expert and some limited discovery on the lost royalty damages claim. The Court may ultimately exclude this expert and her testimony upon examination at trial. The parties shall have FIFTEEN (15) days from entry of this order to conduct Simmons's deposition, or come to an alternative agreement, and AK shall have FOUR (4) weeks from the completion of the deposition to supplement its evidence with its own expert, tender an expert report, and tender the expert for deposition.

**B.     AK's Motion to Exclude Opinions and Testimony of Thomas O. Jukam and Isabella Cunningham**

AK also moves to exclude AIC's survey expert, Dr. Thomas O. Jukam, who provides evidence of likelihood of confusion, because his survey and methods are fundamentally flawed for various reasons. AK highlights two primary problems. First, Jukam used "sequential presentation,"

which AK argues is not appropriate when consumers do not encounter the products in the same vicinity or "on the shelf" next to each other. In short, Jukam started by showing consumers a picture of the outside of an AIC storefront along with multiple AIC ice cream cups. Then Jukam showed the consumers photos of AK's non-dairy frozen dessert in the packaging its sold in at the grocery store along with other examples like Dreyer's, Ben and Jerry's, and so on. Consumers were then asked a number of questions about the pictures, including if they thought any of these examples were put out by the company behind the AIC storefront and ice cream cups. AK argues this "sequential presentation" does not accurately simulate market conditions whereby the relevant consumer would encounter the two goods. AK argues this essentially amounts to a memory matching game, not an indication a consumer would be confused if encountering AIC and AK's respective products in the marketplace as they normally would.

Second, AK says Jukam tested the wrong universe of consumers because Jukam should have been testing only those purchasers of AK's goods, i.e. purchasers of non-dairy frozen dessert. But Jukam tested more broadly consumers of frozen dessert foods, including ice cream. Since Jukam did not actually question the consumers on what types of frozen desserts they purchase, AK contends this error cannot be fixed at this point.

Third, AK complains of other less flagrant flaws in Jukam's methods, including "demand effects," "unrealistic product display," and "improper control." Finally, AK wants the Court to exclude a one-paragraph opinion from Dr. Isabella Cunningham, who was the rebuttal expert to AK's experts, in which she provides only a conclusory statement that she believes Jukam's surveys were appropriately conducted. AK contends she does not provide any basis for the assertion, and this "me too" opinion should be excluded.

As an initial matter, the Court notes AK may well have exposed some legitimate criticisms of Jukam's methods, and the Court is sure the lawyers will be perfectly capable of illuminating these deficiencies for the jury on cross-examination. Of course, this presumes Jukam and Cunningham are even allowed to present their findings before the jury. In the event AIC seeks to put either of these witnesses on the stand, AK may renew its motion to exclude their opinions and testimony. At this point, the Court will examine each to determine admissibility. As stated at the hearing, the parties should be aware this Court tries civil cases on the clock, and if the Court ultimately denies a motion to exclude an expert witness, the time spent examining the disputed witness will be docked against the moving party. As such, the Court CARRIES AK's motion to exclude the opinions and testimony of Jukam and Cunningham until trial.

## Conclusion

After consideration of the summary judgment record, the Court concludes there are a host of genuine issues of material fact, and neither party is entitled to the judgment it seeks at this stage of the litigation. The Court also declines to exclude any expert, expert testimony, or damages theories at this point in time and will wait until trial arrives to more effectively address the admissibility of disputed evidence.

Accordingly,

IT IS ORDERED that Defendant Amy's Kitchen, Inc.'s Motion to Exclude Plaintiff Amy's Ice Creams, Inc.'s Untimely Lost Royalty Theory of Damages, the Expert Testimony of Amelia Simmons, and Sanctions [#36] is DENIED. The Court will reconsider the admissibility of Simmons's proffered expert testimony at trial. The parties shall have FIFTEEN (15) days from entry of this order to conduct Simmons's deposition, or come to

an alternative agreement, and AK shall have FOUR (4) weeks from the completion of the deposition to supplement the evidence with its own expert, tender an expert report, and tender the expert for deposition;

IT IS FURTHER ORDERED that Defendant Amy's Kitchen, Inc.'s Motion to Exclude Opinions and Testimony of Thomas O. Jukam and Isabella Cunningham [#39] is CARRIED. If Plaintiff calls either of these witnesses at trial, the Court will conduct its own examination to determine admissibility;

IT IS FURTHER ORDERED that Defendant Amy's Kitchen, Inc.'s Motion for Summary Judgment [#46] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Plaintiff Amy's Ice Creams, Inc.'s claim for unjust enrichment against Defendant Amy's Kitchen, Inc. is DISMISSED WITHOUT PREJUDICE;

IT IS FINALLY ORDERED that Plaintiff Amy's Ice Creams, Inc.'s Motion for Partial Summary Judgment [#58] is DENIED.

SIGNED this the 8th day of October 2014.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE